Case Nos. 23-5027/23-5075

---

IN THE UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

JENAI HAYES, *Plaintiff-Appellant*, Case No. 23-5027, and
DR. LILY MORENO LEFFLER, DR. JAMES BAILEY, DR. PIPPA
MERIWETHER, and DR. DAMON CATHEY, *Plaintiffs-Appellants*, Case No. 23-
5075,

v.

THE METROPOLITAN GOVERNMENT OF NASHVILLE
AND DAVIDSON COUNTY, TN; DR. ADRIENNE BATTLE,

Defendants - Appellees.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
Case No. 3:20-CV-01023

**APPELLEE METRO NASHVILLE'S PETITION FOR
PANEL REHEARING OR REHEARING EN BANC**

<div style="margin-left:40%">

DEPARTMENT OF LAW OF THE
METROPOLITAN GOVERNMENT OF
NASHVILLE AND DAVIDSON COUNTY
WALLACE W. DIETZ
DIRECTOR OF LAW

J. BROOKS FOX
BENJAMIN A. PUCKETT
Attorneys for Metro Nashville
P.O. Box 196300
Nashville, Tennessee 37219
(615) 862-6375

</div>

{N0586001.1}

### <u>RULE 35(b)(1) STATEMENT</u>

Petitioner, the Metropolitan Government of Nashville and Davidson County, Tennessee, respectfully submits that this case satisfies the criteria for *en banc* review. Through several errors in its analysis, the reviewing panel has now significantly expanded the definition of private speech in public employment. Under the panel's opinion, any testimony offered by a public employee who happens to be under subpoena, whether pursuant to that employee's official duties or not, is now considered "private" speech subject to the protections of the First Amendment. This conflicts with the standard adopted by the Supreme Court in *Lane v. Franks*, 573 U.S. 228 (2014). FED. R. APP. P. 35(b)(1)(A)–(B). Furthermore, the standards for defining public versus private speech in the First Amendment context is a question of exceptional importance to public employers. FED. R. APP. P. 35(b)(1)(B).

## ARGUMENT

**I.   Despite it being supported by the record (and identified as an undisputed fact), the panel incorrectly stated that Dr. Bailey "didn't testify as the District's representative."**

In its First Amendment analysis regarding Dr. Bailey, the panel immediately errs by incorrectly stating, "First, Bailey didn't testify as the District's representative." (Op., Doc. 50-2, at 3.) That statement does not find any support in the record. Instead, the final order from the administrative hearing reflects the fact that Dr. Bailey attended the hearing as the "representative" for Metro Nashville Public Schools. (ALJ's Final Order, Coach Battle Hearing, RE 152-1, Page ID # 3223, "The principal of Whites Creek High School, James K. Bailey, III, Ed.D., was present during the hearing *as the representative for MNPS*." (emphasis added).)

Indeed, this fact was not even disputed by the parties at the summary-judgment level. (*See* Metro's Statement of Fact No. 91 and Plaintiffs' response thereto, RE 184 at 48, Page ID # 5129.)

**II.  Dr. Bailey's official duty to testify as a representative for MNPS at an internal hearing was contemplated by state law, and neither his job description nor a subpoena is determinative in this analysis.**

The panel also incorrectly found that Dr. Bailey's testimony was not a part of his official duties. (Op., Doc. 50-2, at 3.) Yet, pursuant to state education law, providing testimony at the disciplinary hearing for a direct subordinate *is* an ordinary duty for him, as well as every other principal in the state. In Tennessee Code Annotated § 49-5-512, the State Legislature speaks of "prosecuting charges against

any teacher" as being among a school official's "duties": "(b) The director of schools or other school officials shall not be held liable, personally or officially, when *performing their duties in prosecuting charges against any teacher* or teachers under this part." Tenn. Code Ann. § 49-5-512 (emphasis added).

Further, the panel incorrectly relied upon Dr. Bailey's job description when reaching this determination. (Op., Doc. 50-2, at 3; "To start, neither Bailey's job description nor his ordinary duties required him to testify at misconduct hearings.") But a public employee's job description is not dispositive. *Garcetti v. Ceballos*, 547 U.S. 410, 424–25 (2006) ("The proper inquiry is a practical one. *Formal job descriptions often bear little resemblance to the duties an employee actually is expected to perform*, and the listing of a given task in an employee's written job description is neither necessary nor sufficient to demonstrate that conducting the task is within the scope of the employee's professional duties for First Amendment purposes.") (emphasis added); *see also Mayhew v. Town of Smyrna*, 856 F.3d 456, 464 (6th Cir. 2017).

Finally, the panel incorrectly relied upon the fact that "the District had to subpoena Bailey" when it concluded that his testimony was not pursuant to his official duties. (Op., Doc. 50-2, at 3.) In so doing, the panel relied upon the Supreme Court's holding in *Lane v. Franks*. *Id*. But there, the Supreme Court focused on the fact that the testimony was part of an *external* investigation (not an *internal* schools'

investigation, as here). *Lane*, 573 U.S. at 238 ("…whether the First Amendment protects a public employee who provides truthful sworn testimony, compelled by subpoena, *outside the scope of his ordinary job responsibilities*. We hold that it does." (emphasis added)).[1] That case involved the testimony of a public employee offered in a *criminal proceeding* being pursued outside of the school system and having nothing to do with the employee's job. Here, the opposite is true— under state law, Dr. Bailey's testimony at the disciplinary hearing of a direct subordinate was an essential element of this internal personnel matter. There was nothing "private" about his speech.

---

[1] And, of course, any attorney appearing for an evidentiary hearing will subpoena their own witnesses, if for no other reason than to secure a continuance if that particular witness is sick, or in an accident, or is otherwise unable to attend the hearing. *See, e.g.,* 5 AM. JUR. TRIALS 27 (Dec. 2023 update) (discussing "due diligence" as including subpoenaing one's own witnesses in order to justify a later continuance motion in the event the witness cannot not appear) (citing *State v. Bercaw*, 363 So. 3d 124, 126 (Fla. Dist. Ct. App. 2023) (where the court ruled that the lower court should have granted the motion for a continuance where the prosecuting attorney showed "prior due diligence in subpoenaing officer and following up with the Pensacola Police Department to secure the officer's attendance at the hearing"); *see also* Middle Dist. Tenn. Local Rule 39.01(f) ("Subpoena of Trial Witnesses. …If [this service of subpoena] requirement has not been met, a motion for continuance grounded upon failure of a witness to be served or to appear will not be granted except upon a showing of extenuating circumstances.").

**III.    The sole authority cited by the panel for its conclusion that Dr. Bailey's resignation was a disputed question of fact does not support that conclusion, and whether he resigned is not subject to reasonable debate.**

The panel also incorrectly held that "whether Bailey resigned is a debated question of fact." (Op., Doc. 50-2, at 17.) The Court relied upon the Tennessee Supreme Court case *Thompson v. Memphis City Sch. Bd. of Educ.*, 395 S.W.3d 616 (Tenn. 2012), to suggest that, in order to argue otherwise, "the District must do more than show a reasonable employer could conclude that Bailey resigned." *Id*. But the cited case is entirely distinguishable from Dr. Bailey's case. There, the school district, by its own admission, dismissed the teacher for cause, but then it tried to argue that the employee had constructively resigned. *Thompson*, 395 S.W.3d at 619. Nevertheless, the fact that the school district first terminated the employee was never in dispute. *Id*. (The school district was quoted as saying: "I find that discipline is warranted in this case. Therefore, on behalf of the Superintendent, your employment is hereby terminated effective January 2, 2007.").

Furthermore, there is nothing in *Thompson* to suggest that an employer must do more than make a showing that the employee resigned. Again, *the employee in that case was terminated*. *Id*. Thus, the sole authority on which the panel relies when it concludes that "the District must do more than show a reasonable employer could conclude that Bailey resigned" does not actually stand for such a conclusion.

Moreover, Dr. Bailey's voluntary resignation is not subject to reasonable debate in this case. Dr. Bailey simply quit his employment. (Ex. 2 to Zander Dep., RE 149-4, Page ID# 2645, "[M]y last day with the district will be June 30, 2020.") It is important to keep in mind that this was *after* he had applied for, was offered, then he rejected the position of Dean of Students. (RE 147-2, Page ID# 1912.) The written record demonstrates that MNPS was trying to keep him on as an employee, and, instead, Dr. Bailey resigned.

## IV. Dr. Bailey voluntarily resigned, so he is not entitled to the protections of the Teacher Tenure Act or the TPPA.

The best that Dr. Bailey could possibly say is that he was "constructively" dismissed. In fact, he attempted to argue that very thing early in these proceedings. (*See* Sec. Am. Compl., RE 17 [Case 3:21-cv-00122] ¶¶ 129, 135, 136, 144, 154 PageID # 161.) But for purposes of these state-level claims, that means *he made the decision to leave*, and not to avail himself of the procedural protections under state law, and, therefore, he was not "dismissed" as contemplated by state law. But the protections of the Teacher Tenure Act (Tennessee Code Annotated § 49-5-511) all must involve a school system "dismissing" the employee. The Tennessee courts have been very clear that you can't walk away from your job and then try and seek protection under the TTA. *Lemon v. Williamson Cnty. Sch.*, 618 S.W.3d 1, 19 (Tenn. 2021). Thus, by rejecting a valid offer and resigning, Dr. Bailey failed to "act in accordance with the Tenure Act," so he "is not entitled to rely on its provisions now."

*Id*. For the same reasons, Dr. Bailey cannot rely on the TPPA because it only protects employees who have been discharged or terminated. TENN. CODE ANN. § 50-1-304(b). Based on these facts, documented in the record, the panel misapplied state law and erred by allowing Dr. Bailey's TTA and TPPA claims to proceed.

## CONCLUSION AND REQUEST FOR RELIEF

For all these reasons, Metro Nashville respectfully requests that this Petition be circulated to the original panel so that the panel might correct its misapprehension of key facts and the points of law as discussed above. FED. R. APP. P. 40. In addition, to the extent such issues are not corrected by the original panel to conform with the record and prevailing U.S. Supreme Court and Tennessee Supreme Court law, then Metro Nashville also hereby requests that this Petition be considered one for *en banc* review (Fed. R. App. 35(b)(3)) and be circulated to the entire *en banc* court pursuant to 6 Cir. R. 35(d).

Respectfully submitted,

THE DEPARTMENT OF LAW OF THE
METROPOLITAN GOVERNMENT OF
NASHVILLE AND DAVIDSON COUNTY

*/s/ Benjamin A. Puckett*
J. Brooks Fox (TN BPR #16096)
Benjamin A. Puckett (TN BPR #40042)
Metropolitan Courthouse, Suite 108
P.O. Box 196300
Nashville, Tennessee 37219

(615) 862-6375
brook.fox@nashville.gov
benjamin.puckett@nashville.gov
COUNSEL FOR METRO NASHVILLE

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing was served via the court's electronic filing system to: Ann Buntin Steiner, 613 Woodland Street, Nashville, TN 37206; Jesse Ford Harbison, P.O. Box 68251, Nashville, TN 37206; and Anne Bennett Hunter, 1010 Creekside Crossing, Suite 1700-307, Brentwood, TN 37027 on January 10, 2024.

*/s/ Benjamin A. Puckett*
Benjamin A. Puckett

## CERTIFICATE OF COMPLIANCE

1.     I hereby certify that this brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 35(b)(2)(A) and 40(b)(1) because it contains 1,638 words, excluding the portions exempted by Federal Rule of Appellate Procedure 32(f) and Sixth Circuit Rule 32(b)(1).

2.     I hereby certify that this brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

*/s/ Benjamin A. Puckett*
Benjamin A. Puckett

NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0518n.06

Case Nos. 23-5027/5075

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

> FILED
> Dec 13, 2023
> KELLY L. STEPHENS, Clerk

| | | |
|---|---|---|
| DR. JENAI HAYES (23-5027); DR. LILY MORENO LEFFLER, DR. JAMES BAILEY, DR. PIPPA MERIWETHER, and DR. DAMON CATHEY (23-5075), | ) ) ) ) ) | |
| Plaintiffs-Appellants, | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF TENNESSEE |
| v. | ) ) | |
| METROPOLITAN GOVERNMENT OF NASHVILLE AND DAVIDSON COUNTY, TENNESSEE; DR. ADRIENNE BATTLE, | ) ) ) ) | OPINION |
| Defendants-Appellees. | ) ) | |

Before: GRIFFIN, KETHLEDGE, and THAPAR, Circuit Judges.

THAPAR, Circuit Judge. Five school administrators claim their school district retaliated against them for complaining of wrongdoing, discriminated against them, and violated their tenure rights. The district court dismissed some claims on summary judgment. We affirm in part and reverse in part.

I.

In March 2020, Dr. Adrienne Battle became the Director of Schools for the Metropolitan Government of Nashville and Davidson County (the District). Shortly thereafter, the District asked Battle to cut $100 million from the budget. In response, she proposed reorganizing the District's central office.

The District approved the reorganization, but not everyone was happy. Five high-

Nos. 23-5027/5075, *Hayes v. Metro. Gov't of Nashville & Davidson Cnty.*

performing employees lost their positions and sued.  They claim the District retaliated against them for speaking up against wrongdoing.  They also allege race, sex, and age discrimination claims. Finally, they claim the District violated their tenure rights.

After discovery, the parties cross-moved for summary judgment.  The district court denied the employees' motion and partially granted the District's.  One plaintiff appealed and, at the other plaintiffs' request, the district court entered final judgment on the dismissed claims.  *See* Fed. R. Civ. P. 54(b).  Those employees then joined the appeal.

<div align="center">II.</div>

*Bailey's First Amendment Retaliation Claim.*  James Bailey was a local high school principal that the District removed during the reorganization.  Why?  The District claimed his school underperformed.

But Bailey suspected otherwise.  Two years earlier, a basketball coach at Bailey's school assaulted a parent and mishandled program funds.  That coach was Battle's brother.  Bailey investigated the incident, recommended discipline, and testified as a fact witness at the coach's appeal hearing.  At Bailey's recommendation, the District chose not to renew the coach's employment.

Then Battle became Director of Schools.  And less than two months later, Bailey lost his position.  Bailey claims the District (through Battle) removed him because he testified against Battle's brother—and that this retaliation violated his First Amendment rights.  The district court, however, held that the First Amendment didn't protect Bailey's testimony.  We disagree.

The First Amendment protects public employees' right to speak as citizens.  *Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968).  At the same time, when government hires an employee "to speak on the government's behalf and convey its intended messages," it can discipline the

<div align="center">- 2 -</div>

Nos. 23-5027/5075, *Hayes v. Metro. Gov't of Nashville & Davidson Cnty.*

employee for failing to comply. *Kennedy v. Bremerton Sch. Dist.*, 142 S. Ct. 2407, 2423 (2022). That's because speech "pursuant to . . . official duties" is considered "the government's own speech." *Id.*

Three factors guide our analysis of whether a government employee's speech is private and protected. First, the employee must speak as a private citizen, not "pursuant to" his official duties. *Garcetti v. Ceballos*, 547 U.S. 410, 419, 421 (2006). Second, the speech must be on a matter of public concern. *Connick v. Myers*, 461 U.S. 138, 146–47 (1983). Third, the government's interests can't outweigh the employee's speech rights. *Pickering*, 391 U.S. at 568.

Bailey's testimony checks all three boxes.

First, Bailey didn't testify as the District's representative. To start, neither Bailey's job description nor his ordinary duties required him to testify at misconduct hearings. *Cf. Mayhew v. Town of Smyrna*, 856 F.3d 456, 464 (6th Cir. 2017) (holding that reports of misconduct are government speech when the reports are required by the employee's job description); *DeWyse v. Federspiel*, 831 F. App'x 759, 763 (6th Cir. 2020) (similar). To the contrary, the District had to subpoena Bailey, and this was his second time testifying at a hearing in his last twelve years of government service. *See Lane v. Franks*, 573 U.S. 228, 238 (2014).

True, Bailey testified about his work duties, including his investigation into the coach's misconduct and his recommendation to discipline the coach. But "the mere fact" Bailey shared information learned during employment "does not transform that speech into [government] speech." *Id.* at 240. In short, because Bailey provided "truthful sworn testimony, compelled by subpoena, outside the course of his ordinary job responsibilities," his testimony was his speech, not the District's. *Id.* at 231.

Second, Bailey testified about Coach Battle's assault and misuse of public funds—both

- 3 -

Nos. 23-5027/5075, *Hayes v. Metro. Gov't of Nashville & Davidson Cnty.*

matters of public concern.  *Id.* at 241; *Kirkland v. City of Maryville*, 54 F.4th 901, 908 (6th Cir. 2022).  After all, the public has an interest in how government employees treat citizens and how public funds are used.

Third, the District's interests don't outweigh Bailey's speech rights.  The District can punish Bailey for his private speech only if that speech impedes his ordinary duties or interferes with the District's operations.  *See Lane*, 573 U.S. at 242; *Pickering*, 391 U.S. at 572–73.  For instance, if Bailey had disclosed confidential information, his testimony might have conflicted with the District's confidentiality interests.  *See Lane*, 573 U.S. at 242.  But here, the District hasn't argued that Bailey testified falsely or about sensitive information.  Nor has the District explained how Bailey's testimony otherwise interferes with its operations.

Thus, the district court erred in holding that the First Amendment did not protect Bailey's testimony.

### III.

*Bailey's Age Discrimination Claims.*  Bailey claims the District removed him for another improper reason:  his age.  *See* 29 U.S.C. § 623(a)(1); Tenn. Code Ann. § 4-21-401(a).  In response, the District says it removed Bailey because his school ranked last on the District's list of priority (i.e., underperforming) schools.[1]  Because Bailey has introduced evidence casting doubt on that justification, a reasonable jury could question the District's stated reason.  *See Pierson v. Quad/Graphics Printing Corp.*, 749 F.3d 530, 536 (6th Cir. 2014).

To begin, many schools were on the District's priority list.  Yet, in the last decade, Bailey was the only principal on that list whom the District removed because of the school's

---

[1] The district court cited another reason why the District removed Bailey:  Battle thought he was dishonest.  The District switches gears on appeal and argues that Bailey's honesty is irrelevant.

Nos. 23-5027/5075, *Hayes v. Metro. Gov't of Nashville & Davidson Cnty.*

performance.[2]

Additionally, the District didn't follow its usual removal procedures. Typically, when a principal isn't meeting expectations, the District begins by adding him to its list of underperforming principals. Being on the list triggers a handful of less drastic interventions short of removal. If those don't work, the District debates and decides whether to remove the principal at an annual meeting. A senior director testified the District should have followed these procedures in Bailey's case. Yet the District didn't follow any of them: Bailey wasn't added to the list of underperformers, the District didn't take any intermediate measures, and Bailey wasn't discussed at the annual meeting.

Moreover, there is evidence Bailey performed well. Bailey's supervisor said he was doing a great job and to keep up the good work. Another administrator thought Bailey's school improved during Bailey's tenure. Bailey was recently named principal of the year. And when Bailey lost his job, his supervisor wrote a glowing recommendation based on his tenure at the underperforming school.

Finally, the District gave shifting explanations for removing Bailey. Initially, the District told Bailey it was removing him "just because after, you know, several years, . . . the school tends to mirror a principal's sort of qualities and strengths and weaknesses." R. 162-9, Pg. ID 4292. Later, the District sent Bailey a letter telling him he was being removed "due to the district's reorganization and budget impact." R. 189-8, Pg. ID 5296. That letter, the District contends, was sent to Bailey by mistake. But it remains undisputed that the District didn't communicate its current reason for removing Bailey—his school's performance—until after Bailey challenged his

---

[2] Bailey can use this evidence both in his affirmative case of age discrimination and to rebut the District's stated reason for removing him. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511, 519 (1993) (noting evidence relevant to a prima facie case can also support pretext); *Strickland v. City of Detroit*, 995 F.3d 495, 512–14 (6th Cir. 2021) (same).

Nos. 23-5027/5075, *Hayes v. Metro. Gov't of Nashville & Davidson Cnty.*

removal before the Equal Employment Opportunity Commission.  When an employer gives shifting rationales for disciplining an employee, a jury can conclude that the proffered rationale "may not have been the true motivation for the employer's actions."  *Pelcha v. MW Bancorp, Inc.*, 988 F.3d 318, 327–28 (6th Cir. 2021) (citation omitted).

The District raises three responses.  First, the District argues Bailey's performance is irrelevant because it removed him due to the *school*'s performance, not Bailey's.  Yet the District initially told Bailey it was removing him because of *his* performance—because "the school tends to mirror a principal's sort of qualities and strengths and weaknesses."  R. 162-9, Pg. ID 4292.  Thus, evidence of Bailey's good performance undermines at least one of the District's stated reasons for removing him.

Second, the District argues that Bailey didn't claim he was treated worse than principals at other priority schools before the district court.  Not so.  Bailey made that same comparison in his summary judgment briefing.  *See* R. 180, Pg. 47–48 (using the District's "treatment of principals at other priority schools" to prove "priority status did not actually motivate" his removal).

Third, the District argues it fired Bailey because his school was the worst performing in the District.  Maybe.  But as Bailey points out, the District offered shifting explanations and didn't follow its typical procedures when removing him.  Because that evidence calls the District's stated reason into doubt, a jury gets to decide whether the District removed Bailey because of his school's performance.  *See Thurman v. Yellow Freight Sys., Inc.*, 90 F.3d 1160, 1166–67 (6th Cir. 1996).

Of course, Bailey must show "both" that the District's stated reason for removing him was pretextual "and that [age] discrimination was the real reason."  *St. Mary's*, 509 U.S. at 519 (emphasis omitted).  At this stage, however, the District hasn't disputed whether Bailey can show his age was the real reason he was removed.  Thus, we reverse summary judgment on Bailey's age

Nos. 23-5027/5075, *Hayes v. Metro. Gov't of Nashville & Davidson Cnty.*

discrimination claims.

IV.

*Hayes's First Amendment Retaliation Claim.*  Dr. Jenai Hayes served as the Director of School Choice.  Her nine-year-old son attended one of the District's elementary schools.  At school one day, a student teacher asked Hayes's son, who is African American, to read part of a speech titled, "Let's Make a Slave."  She then told the child to climb under his desk and "pretend he was a slave" who was about to be "mailed" in a box.  R. 185-1, Pg. ID 5163–65.  After the lesson, Hayes's son didn't want to return to school.  Hayes filed a Title VI complaint with the District.

Later, a different teacher posted a video of Hayes's son without Hayes's permission.  In the video, her son, who is autistic, danced to a song about being different.  Hayes complained, asserting that the video violated federal privacy law.

Five days after Hayes submitted her privacy complaint, the District eliminated her position. Hayes applied for other positions within the District, including to be a Restorative Practices Specialist.  Meanwhile, she sued, arguing the District violated Title VI by retaliating against her because she complained about the slavery lesson.  The day after Hayes filed her lawsuit, the District denied her application for the Specialist position.  Ultimately, the District transferred Hayes to a classroom teaching position, which came with a nearly $50,000 cut in salary.

Hayes later learned her would-be supervisor, Anthony Hall, recommended hiring her for the Specialist position.  But when Hall's recommendation went to HR so that HR could calculate Hayes's salary, an HR manager rolled her eyes and said "You have to be kidding me.  She has a lawsuit against the district."  R. 193-1, Pg. ID 6104.  The HR manager also noted Hayes had complained about the slavery lesson.

After HR calculated Hayes's salary for the Specialist position, Hall concluded it exceeded

- 7 -

Nos. 23-5027/5075, *Hayes v. Metro. Gov't of Nashville & Davidson Cnty.*

what his budget allowed. So he hired a different candidate whose salary fit within his budget.

Hayes claims the District eliminated her position in retaliation for her slavery-lesson complaint, privacy complaint, and Title VI lawsuit. She also claims the District rejected her Specialist application in retaliation for those same complaints. The District says (A) Hayes forfeited several arguments, and (B) the District would've taken the adverse actions regardless of Hayes's legal complaints.[3]

## A.

The District first claims Hayes forfeited her argument that the slavery-lesson and privacy complaints *caused* the District's adverse actions. That's because, the District asserts, Hayes only addresses the causal relationship in a footnote. *See United States v. Dairy Farmers of Am., Inc.*, 426 F.3d 850, 856 (6th Cir. 2005). Yet Hayes spent a whole section of her brief discussing the "causal connection" between the District's adverse actions and "her protected conduct." Appellant Br. 53–54. In the body of that section, Hayes focused on her Title VI lawsuit. But she clarified in a footnote that the *same* arguments applied to her slavery-lesson and privacy complaints. A party might forfeit an issue by mentioning it only in a passing footnote, but Hayes discussed her causation arguments in both the body and a footnote.

Next, the District argues Hayes can't rely on the HR manager's statements as evidence of retaliation because Hayes didn't raise those statements before the district court. Yet in her summary judgment briefing, Hayes argued the HR manager's "strong retaliatory language . . . shows that the adverse action was motivated by [her] protected conduct." R. 180, Pg. 51. That's

---

[3] In the summary section of its briefing, the District asserts that Hayes's privacy complaint isn't protected speech. But the District doesn't explain why. By addressing the issue "in a perfunctory manner," the District forfeited the argument. *Wright v. City of Euclid*, 962 F.3d 852, 879 (6th Cir. 2020) (citation omitted).

Nos. 23-5027/5075, *Hayes v. Metro. Gov't of Nashville & Davidson Cnty.*

enough to preserve the argument.

Finally, the District argues that Hayes raises a new retaliation claim on appeal. While Hayes raised claims based on her slavery-lesson and privacy complaints before the district court, the District argues she didn't raise a First Amendment retaliation claim based on her Title VI lawsuit. But retaliation claims are measured in retaliatory actions, not instances of protected conduct. *See Nieves v. Bartlett*, 139 S. Ct. 1715, 1722 (2019); *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 255 (6th Cir. 2006). Thus, Hayes has two retaliation claims: one based on her removal, and another based on the District's denial of her job application. Her Title VI lawsuit, slavery-lesson complaint, and privacy complaint are separate arguments in support of those claims. And Hayes can raise new arguments in support of claims she litigated below. *Lebron v. Nat'l R.R. Passenger Corp.*, 513 U.S. 374, 379 (1995).

B.

Turning to causation, a reasonable jury could believe Hayes's complaints caused the District to eliminate her position, but not that her complaints caused the District to deny her job application. Hayes must initially prove these adverse actions were motivated "at least in part" by her complaints. *Eckerman v. Tenn. Dep't of Safety*, 636 F.3d 202, 207 (6th Cir. 2010). Once she meets this burden, the District must show it would have taken the actions "absent [Hayes's] protected conduct"—and that no reasonable jury could find otherwise. *Id.* at 208 (citation omitted); *Dye v. Off. of the Racing Comm'n*, 702 F.3d 286, 308 (6th Cir. 2012). We consider each adverse action in turn.

1.

A reasonable jury could conclude the District eliminated Hayes's position because of her complaints. The District eliminated Hayes's position five days after she complained about the

- 9 -

Nos. 23-5027/5075, *Hayes v. Metro. Gov't of Nashville & Davidson Cnty.*

video of her son and two-and-a-half months after she complained about the slavery lesson. Such a short timeline is evidence of causation. *See Dye*, 702 F.3d at 305–06 (collecting cases). Moreover, during the reorganization, the District removed every administrator who Battle knew had complained about District policies. Thus, a reasonable jury could conclude the District removed Hayes "at least in part" because of her complaints. *Eckerman*, 636 F.3d at 207.

For its part, the District argues it would have eliminated Hayes's position regardless because it needed to cut $100 million from its budget. But we have held that a jury can doubt an employer's budget-based explanation for firing an employee when the firing occurs months after the employee complained and when coworkers identify a retaliatory atmosphere at work. *Dye*, 702 F.3d at 308. Hayes has shown that and more. The alleged retaliation occurred months after Hayes complained, and multiple employees testified the District had an atmosphere of retaliation. Moreover, the District's budget *increased* after the reorganization. Further, when the District cuts its budget, it typically makes non-personnel cuts before dismissing employees. Battle did the opposite. Finally, looking at this and other evidence, a school-budgeting expert evaluated the reorganization and determined that it didn't appear to be driven by budget concerns. Thus, a jury could doubt that the District removed Hayes because of the budget.

### 2.

By contrast, Hayes has not shown that the District denied her application for the Specialist position because of her complaints. To be sure, after Hayes applied and interviewed for the position, Hall wanted to hire her. And when he sent his request to HR, a manager mentioned Hayes's complaints. But calculating Hayes's salary was HR's only relevant involvement in the hiring process. Ultimately, Hall was the one who decided not to hire Hayes because her salary exceeded his budget.

- 10 -

Nos. 23-5027/5075, *Hayes v. Metro. Gov't of Nashville & Davidson Cnty.*

Hayes hasn't argued that Hall acted out of retaliatory animus. Nor has Hayes argued that HR calculated the salary in a way that directed Hall to deny Hayes's application. *See, e.g.*, *Bose v. Bea*, 947 F.3d 983, 990 (6th Cir. 2020). Accordingly, the HR manager's stray comment can't establish that Hayes would have been hired but for her complaints. *See, e.g.*, *Rowan v. Lockheed Martin Energy Sys., Inc.*, 360 F.3d 544, 550 (6th Cir. 2004).

Thus, the District is entitled to summary judgment on Hayes's First Amendment challenge to the denial of her application for the Specialist position. But it is not entitled to summary judgment on Hayes's challenge to the District's elimination of her position.

<div align="center">V.</div>

*Hayes's Title VI Retaliation Claims.* Hayes claims the District also violated Title VI when it eliminated her position and denied her job application.[4] In response, the District makes the same arguments discussed above: it eliminated Hayes's position for budget reasons, it would have denied Hayes's application anyway because her requested salary was too high, and the HR manager's statements are irrelevant because HR didn't have hiring authority. The same analysis from Part IV applies here. A reasonable jury could doubt the District's budget concerns, but not the District's salary rationale. Thus, the District is entitled to summary judgment on Hayes's application-based claim. But it's not entitled to summary judgment on Hayes's claim based on the elimination of her position.

---

[4] Title VI doesn't expressly prohibit retaliation. *See* 42 U.S.C. § 2000d. *But see* 34 C.F.R. § 100.7(e). So, it's not clear that it creates a private right of action for retaliation claims. *See, e.g.*, *Alexander v. Sandoval*, 532 U.S. 275 (2001); *Peters v. Jenney*, 327 F.3d 307, 324 (4th Cir. 2003) (Widener, J., dissenting). *But see Jenney*, 327 F.3d at 316–17 (majority op.) (holding it does); *McCullough v. Bd. of Regents of the Univ. Sys. of Ga.*, 623 F. App'x 980, 982 (11th Cir. 2015) (per curiam) (same); *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 173–74, 178 (2005) (finding a similar right of action for retaliation under Title IX). But because the parties don't dispute the point, we assume without deciding that it does.

Nos. 23-5027/5075, *Hayes v. Metro. Gov't of Nashville & Davidson Cnty.*

## VI.

*Tennessee Human Rights Act.* In the summary section of her opening brief, Hayes mentions a retaliation claim asserted under the Tennessee Human Rights Act. *See* Tenn. Code Ann. § 4-21-301(a)(1). Hayes doesn't discuss this claim elsewhere in her brief. Moreover, the only THRA claim that Hayes raised before the district court was based on an allegation of sex discrimination. And Hayes confirms she "does not appeal" her sex-based retaliation claim. Appellant Br. 48 n.23. Accordingly, Hayes either forfeited or waived the right to appeal her THRA retaliation claim. *See Williamson v. Recovery Ltd.*, 731 F.3d 608, 621 (6th Cir. 2013).

## VII.

*Leffler's Title VII Retaliation Claim.* Dr. Lilly Leffler served as one of thirteen executive directors. During the reorganization, the District required these directors to reapply for their positions. All but two of those who reapplied were rehired. Leffler was not. She claims the District removed her because her cousin-in-law sued the District for sex discrimination.

Title VII allows employees to sue for retaliation when the employer punishes them for another employee's protected conduct. *Thompson v. N. Am. Stainless, LP*, 562 U.S. 170, 174 (2011). To succeed on her Title VII claim, Leffler must initially show (1) her cousin-in-law is a close contact, (2) the cousin engaged in conduct protected by Title VII, (3) the District took an adverse action against Leffler, and (4) "a causal chain links" the adverse action to the cousin's protected conduct. *See Threat v. City of Cleveland*, 6 F.4th 672, 680–81 (6th Cir. 2021).[5] Once Leffler makes her initial showing, the District must offer a nonretaliatory reason for removing Leffler. *Boshaw v. Midland Brewing Co.*, 32 F.4th 598, 605 (6th Cir. 2022). Then, Leffler bears

---

[5] The cousin-in-law qualifies as a "close" contact, and Leffler's removal qualifies as "adverse," if a reasonable employee in the cousin-in-law's position would be "dissuaded from engaging in protected activity" if she knew Leffler would be removed as a result. *Thompson*, 562 U.S. at 174.

- 12 -

the burden to show that the District's proffered reason is a pretext for retaliation. *Id.*

Only causation and pretext are at issue here. Leffler's initial causation burden is "not onerous." *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 523 (6th Cir. 2008). She must proffer evidence allowing a jury to conclude the District wouldn't have removed Leffler absent her cousin's suit. *See Thompson*, 562 U.S. at 173, 178. She has. After Leffler's cousin sued, Battle repeatedly asked Leffler's supervisor if Leffler could remain "loyal" and "separate her work" from the cousin's suit. R.188-3, Pg. ID 5267. Moreover, the District removed Leffler two-and-a-half months after the cousin's suit against the District settled. When an employer takes an adverse action soon after the employee engages in protected activity, a jury can infer the protected activity caused the adverse action. *Mickey*, 516 F.3d at 525. In connection with Battle's repeated questions, a two-month delay is enough for a jury to make that inference. *Dye*, 702 F.3d at 306 (collecting cases holding that three-month delays suffice to show causation).

Turning to pretext, the District claims it removed Leffler because it needed to cut $100 million from the budget. The District also notes that it removed all thirteen executive directors from their positions, not just Leffler. But, as discussed above, plaintiffs have introduced evidence that would allow a jury to doubt the District's budget concerns. *Supra* Part IV(B)(1). Regardless, Leffler doesn't need to show that the entire reorganization was motivated by retaliatory animus— just that a jury could doubt the District's stated reason for removing *her*. *See Threat*, 6 F.4th at 680 (focusing on the "adverse action" taken "against the employee"). Because Leffler has done so, the District isn't entitled to summary judgment on Leffler's Title VII retaliation claim.

VIII.

A.

*State Tenure Protections*. The Tennessee Teacher Tenure Act allows the District to

Nos. 23-5027/5075, *Hayes v. Metro. Gov't of Nashville & Davidson Cnty.*

"dismiss[]" tenured employees only for certain reasons listed in the Act. Tenn. Code Ann. § 49-5-511. Hayes, Leffler, Damon Cathey, and Pippa Meriwether claim the District dismissed them for reasons other than those permitted by the Act.

Hayes, Cathey, and Meriwether were transferred, not dismissed. When the District told these administrators it would remove them from their positions, it allowed them to apply for other positions within the District. If they didn't secure other roles within a few weeks, the District promised to "transfer[]" them to teaching positions. *E.g.*, R. 189-5, Pg. ID 5293.

Things proceeded as promised. Cathey and Meriwether accepted roles as district principals, and the District transferred Hayes to a district teaching position. In other words, the District removed these administrators from their positions and transferred them from "one type of work to another." *Lawrence Cnty. Educ. Ass'n v. Lawrence Cnty. Bd. of Educ.*, 244 S.W.3d 302, 314 (Tenn. 2007). That's a transfer, not a dismissal. *Id.*; Tenn. Code Ann. § 49-5-501(12). As such, Hayes, Cathey, and Meriwether can't challenge their transfers under the Tenure Act's dismissal provisions.

Leffler's situation was different: when the District told Leffler it planned to eliminate her position, it didn't promise to transfer her to another role. But unlike the other administrators, Leffler wasn't tenured or under contract. So naturally, the Tenure Act's protections don't apply to her. *See Gibson v. Butler*, 484 S.W.2d 356, 359 (Tenn. 1972) (holding that the Tenure Act "affords protection to those who acquire tenure but none to those . . . who have not"); *Cannon Cnty. Bd. of Educ. v. Wade*, No. M2006-02001-COA-R3-CV, 2008 WL 3069466, at *10 & n.14 (Tenn. Ct. App. July 31, 2008) (noting nontenured employees without a contract do not enjoy the Tenure Act's dismissal protections).

- 14 -

Nos. 23-5027/5075, *Hayes v. Metro. Gov't of Nashville & Davidson Cnty.*

## B.

Hayes, Meriwether, and Cathey also claim the District violated the Tenure Act's transfer protections. But school districts may transfer employees whenever "necessary to the efficient operation of the school system." Tenn. Code Ann. § 49-5-510. Under Tennessee law, courts must presume that transfers are done in good faith. *Geller v. Henry Cnty. Bd. of Educ.*, 602 S.W.3d 876, 888 (Tenn. 2020) (quotation omitted). Indeed, courts may review only whether the transfers "could be" classified as improving the District's operations. *Id.* (quotation omitted). This is an exceedingly narrow scope of review.[6] For good reason: the administrators have tenure only in their status as educators, not in "any specific position." Tenn. Code Ann. § 49-5-501(11)(C). And Tennessee doesn't want courts micromanaging its schools.

Here, the District transferred Hayes, Cathey, and Meriwether as part of an office-wide reorganization spurred by the District's proposed budget cut. Thus, the transfers "could be" characterized as improving the District's operations. *See Geller*, 602 S.W.3d at 888 (quotation omitted).

To be sure, the administrators introduce evidence calling the District's motives into doubt. And if the administrators could show that the District's sole motivation was retaliatory, the administrators might succeed on their Tenure Act claims. *Springer v. Williamson Cnty. Bd. of Educ.*, 906 S.W.2d 924, 926–27 (Tenn. Ct. App. 1995); *see also Galyon v. Collins*, No. 03A01-9711-DH-513, 1998 WL 331300, at *7 (Tenn. Ct. App. June 24, 1998). But at most, the administrators show that a jury *could* conclude retaliatory animus played a role in the transfers. It remains undisputed that the District transferred the administrators as part of an office-wide

---

[6] Indeed, as far as we can tell, in the forty-five years since Tennessee clarified its standard for challenging transfers, no Tennessee appellate court has found a transfer to be improperly motivated. *See McKenna v. Sumner Cnty. Bd. of Educ.*, 574 S.W.2d 527, 529, 534 (Tenn. 1978) (clarifying the standard).

Nos. 23-5027/5075, *Hayes v. Metro. Gov't of Nashville & Davidson Cnty.*

reorganization and in response to a request to cut $100 million from the budget. Thus, while there's room for a jury to doubt the District's budget concerns, there's no question budget concerns "could" have motivated the transfers. That's enough to defeat the administrators' claims. *See Geller*, 602 S.W.2d at 888; *Springer*, 906 S.W.2d at 926–27.

<div align="center">C.</div>

Hayes, Cathey, and Meriwether also claim their transfers violated school board policy. *See* Tenn. Code Ann. § 49-5-510; *Geller*, 602 S.W.3d at 892–93. But they didn't raise this claim before the district court, so they can't pursue it on appeal. *See Bridgepoint Music, Inc. v. WB Music Corp.*, 508 F.3d 394, 400 (6th Cir. 2007).

<div align="center">D.</div>

Bailey claims the District violated the Tenure Act by dismissing him for an improper reason: to retaliate against his testimony in Coach Battle's appeal hearing. *See* Tenn. Code Ann. § 49-5-511. He also challenges his dismissal under the Tennessee Public Protection Act, which prohibits the District from dismissing employees for speaking out against illegal activities. *Id.* § 50-1-304(b). The District responds to both claims by arguing it didn't "dismiss" Bailey.

The District told Bailey his last day as a principal would be June 30. It gave Bailey until June 15 to find another position on his own. If he didn't, the District would transfer him to a classroom teaching position.

Neither option panned out. Although Bailey applied to be the District's Dean of Students and received an offer, he rejected it because it paid half his prior salary. And though Bailey hadn't accepted another position by June 15, the District never transferred him to a new role. Nor did Bailey think the District could fulfill its promise to transfer him into a classroom teaching position: he wasn't licensed to teach. As a result, on June 30, Bailey's employment with the District lapsed.

<div align="center">- 16 -</div>

The District concedes that it removed Bailey from his principal position, that it didn't transfer Bailey to a new role, and that it no longer employs Bailey. Usually, that's a "dismissal." *See* Tenn. Code Ann. § 49-5-501(11)(B)(i); *see also Harman v. Univ. of Tenn.*, 353 S.W.3d 737, 738–39 (Tenn. 2011) (defining discharge).

But the District maintains it didn't dismiss Bailey. Instead, the District says, Bailey resigned. For support, the District points to the last sentence in a letter Bailey sent to the District on June 15. In the letter, Bailey detailed his situation and claimed the District was retaliating against him. Bailey concluded the letter by stating, "[a]s a result of [the District's] actions, my last day with the district will be June 30." R. 149-4, Pg. ID 2645.

To succeed on this argument, the District must do more than show a reasonable employer could conclude that Bailey resigned. *See Thompson v. Memphis City Sch. Bd. of Educ.*, 395 S.W.3d 616, 625–27 (Tenn. 2012). Instead, Bailey must have actually resigned. *See id.*

And whether Bailey resigned is a debated question of fact. Bailey called his letter a "formal complaint of retaliation." R. 149-4, Pg. ID 2644. Nowhere in the complaint does Bailey use the word "resign," and nowhere does he suggest he wanted to quit. Bailey wasn't licensed to hold the only position the District promised to transfer him into. Thus, in context, Bailey's last sentence could convey his belief that the District would terminate him on June 30—not that he'd resign on that day.

In holding otherwise, the district court read Bailey's letter as claiming the District left him no choice but to resign. *See Lemon v. Williamson Cnty. Schs.*, 618 S.W.3d 1, 7–8 (Tenn. 2021). But there are two ways to read Bailey's letter, and a jury could conclude the letter was a complaint, not a resignation. Because we must construe the letter in Bailey's favor, summary judgment is improper. *See* Fed. R. Civ. P. 56.

Nos. 23-5027/5075, *Hayes v. Metro. Gov't of Nashville & Davidson Cnty.*

Finally, nothing turns on the fact that Bailey applied for the Dean of Students position, received an offer, and declined to take the job. The Tenure Act doesn't require employees to apply for, or accept, other positions before challenging their dismissals. *See* Tenn. Code Ann. §§ 49-5-511 to -513. Moreover, the District promised to transfer Bailey regardless of whether he applied for a new role. Because the District failed to follow through on its promise, a jury could conclude the District dismissed Bailey. Thus, the district court erred in granting summary judgment on Bailey's Tenure and Public Protection Act claims.

\*     \*     \*

We reverse the district court's grant of summary judgment on Bailey's First Amendment, age discrimination, Tennessee Teacher Tenure Act, and Tennessee Public Protection Act claims; Hayes's First Amendment and Title VI claims based on the elimination of her position; and Leffler's Title VII retaliation claim. We affirm summary judgment on the remaining claims. And we remand to the district court for further proceedings consistent with this opinion.

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

Nos. 23-5027/5075

DR. JENAI HAYES (23-5027); DR. LILY MORENO
LEFFLER, DR. JAMES BAILEY, DR. PIPPA
MERIWETHER, and DR. DAMON CATHEY (23-5075),

      Plaintiffs -Appellants.

      v.

METROPOLITAN GOVERNMENT OF NASHVILLE AND
DAVIDSON COUNTY, TENNESSEE; DR. ADRIENNE
BATTLE,

      Defendants - Appellees.

> **FILED**
> Dec 13, 2023
> KELLY L. STEPHENS, Clerk

Before:  GRIFFIN, KETHLEDGE, and THAPAR, Circuit Judges.

# JUDGMENT

On Appeal from the United States District Court
for the Middle District of Tennessee at Nashville.

THIS CAUSE was heard on the record from the district court and was argued by counsel.

IN CONSIDERATION THEREOF, it is ORDERED that the district court's grant of summary judgment on Bailey's First Amendment, age discrimination, Tennessee Teacher Tenure Act, and Tennessee Public Protection Act claims; Hayes's First Amendment and Title VI claims based on the elimination of her position; and Leffler's Title VII retaliation claim is REVERSED and REMANDED for further proceedings consistent with this opinion. IT IS FURTHER ORDERED that the judgment of the district court on the remaining claims is AFFIRMED.

**ENTERED BY ORDER OF THE COURT**

_Kelly L. Stephens_

_____
Kelly L. Stephens, Clerk